# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BANC OF AMERICA SECURITIES LLC; THE BANK OF NEW YORK;
BEAR, STEARNS SECURITIES CORP.; CITIGROUP, INC.;
CREDIT SUISSE (USA) INC.; DEUTSCHE BANK SECURITIES,
INC.; THE GOLDMAN SACHS GROUP, INC.; LEHMAN BROTHERS
INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.;
MORGAN STANLEY & CO., INCORPORATED; UBS FINANCIAL
SERVICES, INC.; and DOES 1 through 100

**YOU ARE BEING SUED BY PLAINTIFF:** JOSEPH AVENIUS; AN
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*   INDIVIDUAL
Additional Parties Attachment form is attached.

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: | CASE NUMBER: |
| --- | --- |
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* CGC-06-453422 |

San Francisco Superior Court
400 McAllister Street

San Francisco  94102
Unlimited Civil Jurisdiction

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Theodore A. Griffinger / Ellen A. Cirangle        T: 415-981-0550 F: 415-981-4343
Stein & Lubin LLP
600 Montgomery Street, 14th Floor
San Francisco, CA  94111

DATE:                                 Clerk, by      Jun Panelo              , Deputy
*(Fecha)* JUN 22 2006  GORDON PARK-LI   *(Secretario)*                        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*
   under: ☒ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*                                          Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

. 06/22/2006 THU 13:02   FAX 415 357 0595 SPECIALIZED LEGAL SERV.                    @ 005/036

| | |
|---|---|
| SHORT TITLE: Joseph Avenius, an individual, et al. v. Banc of America Securities, LLC, et al. | CASE NUMBER: |

## INSTRUCTIONS FOR USE

▶  This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

▶  If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[X] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

JOSEPH AVENIUS, an individual; JUANITA AVENIUS, an individual; JOHN BRADSHAW, an individual; LIZABETH BRADSHAW, an individual; MARK BRADY, an individual; DAVID CONCORDIA, an individual; RICHARD CONTI, an individual; DYNAPURE TECHNOLOGIES, INC., a Nevada corporation; DAVID EVERSWICK, an individual; JOYCE EVERSWICK, an individual; LAWRENCE GRECO, an individual; FEB GRUBMAN, an individual; EDWARD HATCH, an individual; DONALD JOHNSON, an individual; ANTHONY KEHLENBECK, an individual; MARK KOLESINSKY, an individual; DAVID LOUNDY, an individual; MICHAEL MATHER, an individual; PHILLIP MATTHEWS, an individual; DONALD MILLER, an individual; MARY ANNE MILLER, an individual; DANIEL PALERMO, an individual; QUINTET, LLC, a Nevada limited liability company; JEFFERY W. RHOADS, an individual; ROBIN RODABAUGH, an individual; PETER ROSEN, an individual; ALAN ROSS, an individual; DAVID RUBIN, an individual; ALLEN SHINN, an individual; RIZALINA SMART, an individual; ROBERT SMYKOWSKI, an individual; THOMAS VALLARINO, an individual; LEONARD VIDAL, an individual; VALERIE VIDAL, an individual; IRA WALTER, an individual; LINDA WALTER, an individual; NORMAN WALTER, an individual; DORIS WALTER, an individual; ROBERT WILEN, an individual; JEFFREY WILLIAMS, an individual

Form Adopted by Rule 982(a)(9)(A)
Judicial Council of California
982(a)(9)(A) [New January 1, 1993]
Mandatory Form

## ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

Legal
Solutions
Plus

.06/22/2006 THU 13:03  FAX 415 357 0595 SPECIALIZED LEGAL SERV.                      ⍰006/036

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Theodore A. Griffinger (SBN 66028)
Ellen A. Cirangle (SBN 164188)
Stein & Lubin LLP
600 Montgomery Street, 14th Floor
San Francisco, CA  94111
TELEPHONE NO: 415-981-0550       FAX NO.: 415-981-4343
ATTORNEY FOR *(Name):* Joseph Avenius, an individual, et al.

**FOR COURT USE ONLY**

ENDORSED
F I L E D
San Francisco County Superior Court

JUN 2 2 2006

GORDON PARK-LI, Clerk
BY: _____ JUN P. PANELO
                        Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Unlimited Civil Jurisdiction

CASE NAME: Joseph Avenius, an individual, et al. v.
Banc of America Securities LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount          (Amount<br>demanded        demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | CGC-06-453422<br>JUDGE:<br>DEPT: |

Items 1–5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[X] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not  complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence          f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action (specify): Two: (1) Violations of California Corporations Code Sections 25400, et seq.; and (2) Unfair Business Practices
5. This case [ ] is [X] is not  a class action suit.   (Cal. Bus. & Prof. Code Sections 17200, et seq. and Sections 17500, et seq.)
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 22, 2006

Theodore A. Griffinger (SBN 66028)
(TYPE OR PRINT NAME)                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2000]

**CIVIL CASE COVER SHEET**

Legal
Solutions
⊕ Plus

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers**

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 201.8(c) and 227 of the California Rules of Court.

**To Parties in Complex Cases**

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 1800 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case-Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential.)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rule 1800-1812)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

CASE NUMBER: CGC-06-453422  JOSEPH AVENIUS et al VS. BANC OF AMERICA SECURITI

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

|  |  |
|--|--|
| DATE: | NOV-22-2006 |
| TIME: | 9:00AM |
| PLACE: | Department 212 |
|  | 400 McAllister Street |
|  | San Francisco, CA  94102-3680 |

All parties must appear and comply with Local Rule 3.

> CRC 212 (g)(1) requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.
>
> However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

> IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 3)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

1 | THEODORE A. GRIFFINGER, JR. (SBN 66028)
ELLEN A. CIRANGLE (SBN 164188)
2 | STEIN & LUBIN LLP
600 Montgomery Street, 14th Floor
3 | San Francisco, CA 94111
Telephone: (415) 981-0550
4 | Facsimile:  (415) 981-4343

5 | Attorneys for Plaintiffs
JOSEPH AVENIUS, an individual, et al.

6

7

8 | SUPERIOR COURT OF CALIFORNIA

9 | SAN FRANCISCO COUNTY

10 | UNLIMITED CIVIL JURISDICTION

11

12 | JOSEPH AVENIUS, an individual; JUANITA AVENIUS, an individual; JOHN

Case No.  **CGC-06-453422**

13 | BRADSHAW, an individual; LIZABETH BRADSHAW, an individual; MARK BRADY,
14 | an individual; DAVID CONCORDIA, an individual; RICHARD CONTI, an individual;

**COMPLAINT FOR:**

15 | DYNAPURE TECHNOLOGIES, INC., a Nevada corporation; DAVID EVERSWICK, an
16 | individual; JOYCE EVERSWICK, an individual; LAWRENCE GRECO, an

(1) **VIOLATIONS OF CALIFORNIA CORPORATIONS CODE SECTIONS 25400, *ET SEQ.***

17 | individual; FEB GRUBMAN, an individual; EDWARD HATCH, an individual; DONALD
18 | JOHNSON, an individual; ANTHONY KEHLENBECK, an individual; MARK
19 | KOLESINSKY, an individual; DAVID LOUNDY, an individual; MICHAEL

(2) **UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF.  CODE §§ 17200, *ET SEQ.* AND §§ 17500, *ET SEQ.***

20 | MATHER, an individual; PHILLIP MATTHEWS, an individual; DONALD
21 | MILLER, an individual; MARY ANNE MILLER, an individual; DANIEL PALERMO,
22 | an individual; QUINTET, LLC, a Nevada limited liability company; JEFFERY W.

**JURY TRIAL DEMANDED**

23 | RHOADS, an individual; ROBIN RODABAUGH, an individual; PETER
24 | ROSEN, an individual; ALAN ROSS, an individual; DAVID RUBIN, an individual;
25 | ALLEN SHINN, an individual; RIZALINA SMART, an individual; ROBERT
26 | SMYKOWSKI, an individual; THOMAS VALLARINO, an individual; LEONARD
27 | VIDAL, an individual; VALERIE VIDAL, an individual; IRA WALTER, an individual;
28 | LINDA WALTER, an individual; NORMAN

ENDORSED
**F I L E D**
San Francisco County Superior Court

JUN 2 2 2006

GORDON PARK-LI, Clerk
BY: _____ JUN P. PANELO
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

NOV 2 2 2006 - 9ᵃᵐ AM

DEPARTMENT 212

54190002/327897v1

1

COMPLAINT

1  WALTER, an individual; DORIS WALTER,
   an individual; ROBERT WILEN, an
2  individual; JEFFREY WILLIAMS, an
   individual,

3                          Plaintiffs,

4  v.

5
   BANC OF AMERICA SECURITIES LLC;
6  THE BANK OF NEW YORK; BEAR,
   STEARNS SECURITIES CORP.;
7  CITIGROUP, INC.; CREDIT SUISSE (USA)
   INC.; DEUTSCHE BANK SECURITIES,
8  INC.; THE GOLDMAN SACHS GROUP,
   INC.; LEHMAN BROTHERS INC.;
9  MERRILL LYNCH, PIERCE, FENNER &
   SMITH, INC.; MORGAN STANLEY & CO.,
10 INCORPORATED; UBS FINANCIAL
   SERVICES, INC.; and DOES 1 through 100,
11
                          Defendants.
12

13        Plaintiffs Joseph Avenius, Juanita Avenius, John Bradshaw, Lizabeth Bradshaw,

14 Mark Brady, David Concordia, Richard Conti, DynaPure Technologies, Inc., David Everswick,

15 Joyce Everswick, Lawrence Greco, Feb Grumman, Edward Hatch, Donald Johnson, Anthony

16 Kehlenbeck, Mark Kolesinsky, David Loudy, Michael Mather, Philip Mathews, Donald Miller,

17 Mary Anne Miller, Daniel Palermo, Quintet, LLC, Jeffery W. Rhoads, Robin Rodabaugh, Peter

18 Rosen, Alan Ross, David Rubin, Allen Shinn, Rizalina Smart, Robert Smykowski, Thomas

19 Vallarino, Leonard Vidal, Valerie Vidal, Ira Walter, Linda Walter, Norman Walter, Doris Walter,

20 Robert Wilen, and Jeffrey Williams ("Plaintiffs"), for their Complaint, allege as follows:

21                          **NATURE OF THE CASE**

22        1.      Defendants participated in a massive, illegal stock market manipulation

23 scheme, the effect of which has been to wrongfully manipulate the price of shares in Novastar

24 Financial, Inc. ("NFI"). Defendants control 83% of the prime brokerage market. At all relevant

25 times herein, Defendants took orders for purchases, sales and short sales of the stock of NFI.

26 Defendants had no intention of covering such orders with borrowed stock or with stock issued by

27 NFI, as they are required to do. Rather, Defendants intentionally failed to deliver NFI stock for

28 settlements of these positions, thereby effecting transactions in NFI that involve no change or

1  improper change in the beneficial ownership of the security. Defendants' actions caused and

2  continue to cause a false and misleading appearance of the market for NFI, deceiving investors

3  about the pricing and availability of the supply of shares for sale while intentionally causing

4  dramatic distortions with regard to the nature and amount of active trading in NFI stock, which

5  have caused NFI's share price to drop.   Plaintiffs, individual shareholders of NFI, were harmed by

6  the drop in and depression of NFI's stock price. As set forth below, Defendants' illegal conduct

7  gives rise to claims for (i) violations of California Corporations Code  §§ 25400, *et seq.* and (ii)

8  unfair business practices in violation of Business & Professions Code §§ 17200, *et seq.* and 17500,

9  *et seq.*

10  **PARTIES**

11        2.      Joseph and Juanita Avenius, (collectively "Avenius") are individuals and

12  residents of Hillsborough, New Jersey and are current or former owners of NFI common stock.

13        3.      John and Lizabeth Bradshaw (collectively "Bradshaw") are individuals and

14  residents of Indianapolis, Indiana and are current or former owners of NFI common stock.

15        4.      Mark Brady ("Brady") is an individual and resident of Dallas, Texas and is

16  a current or former owner of NFI common stock.

17        5.      David Concordia ("Concordia") is an individual and resident of Worcester,

18  Massachusetts and is a current or former owner of NFI common stock.

19        6.      Richard Conti ("Conti") is an individual and resident of Martinez, Georgia

20  and is a current or former owner of NFI common stock.

21        7.      DynaPure Technologies, Inc. ("DynaPure") is a Nevada corporation with its

22  principal place of business in Carson City, Nevada and is a current or former owner of NFI

23  common stock.

24        8.      David and Joyce Everswick (collectively "Everswick") are individuals and

25  residents of Succasunna, New Jersey and are current or former owners of NFI common stock.

26        9.      Laurence Greco ("Greco") is an individual and resident of Moraga,

27  California and is a current or former owner of NFI common stock.

28

1         10.    Feb Grubman ("Grubman") is an individual and resident of Chicago,

2   Illinois and is a current or former owner of NFI common stock.

3         11.    Edward Hatch ("Hatch") is an individual and resident of Granite Bay,

4   California and is a current or former owner of NFI common stock.

5         12.    Donald Johnson ("D. Johnson") is an individual and resident of Casa

6   Grande, Arizona and is a current or former owner of NFI common stock.

7         13.    Anthony Kehlenbeck ("Kehlenbeck") is an individual and resident of

8   Northfork, California and is a current or former owner of NFI common stock.

9         14.    Mark Kolesinski ("Kolesinski") is an individual and resident of Phoenix,

10  Arizona and is a current or former owner of NFI common stock.

11        15.    David Loundy ("Loundy") is an individual and resident of Gencoe, Illinois

12  and is a current or former owner of NFI common stock.

13        16.    Michael F. Mather ("Mather") is an individual and resident of Mt.

14  Pleasant, South Carolina and is a current or former owner of NFI common stock.

15        17.    Phillip Mathews ("Mathews") is an individual and resident of San

16  Francisco, California and is a current or former owner of NFI common stock.

17        18.    Donald Miller ("D. Miller") is an individual and resident of Duncanville,

18  Texas and is a current or former owner of NFI common stock.

19        19.    Mary Anne Miller ("M. Miller") is an individual and resident of Dallas,

20  Texas and is a current or former owner of NFI common stock.

21        20.    Daniel Palermo and Gail Walter (collectively "Palermo") are individuals

22  and residents of Tarrytown, New York and are current or former owners of NFI common stock.

23        21.    Quintet, LLC ("Quintet") is a Nevada limited liability company with its

24  principal place of business in Reno, Nevada and is a current or former owner of NFI common

25  stock.

26        22.    Jeffery W. Rhoads ("Rhoads") is an individual and resident of St. Charles,

27  Missouri and is a current or former owner of NFI common stock.

28        23.    Robin Rodabaugh ("Rodabaugh") is an individual and resident of Atwater,

1    Ohio and is a current or former owner of NFI common stock.

2          24.    Peter Rosen ("Rosen") is an individual and resident of Jersey City, New

3    Jersey and is a current or former owner of NFI common stock.

4          25.    Alan Ross ("Ross") is an individual and resident of Camden E, Ontario,

5    Canada and is a current or former owner of NFI common stock.

6          26.    Dave Rubin ("Rubin") is an individual and resident of Sequim, Washington

7    and is a current or former owner of NFI common stock.

8          27.    Allen Shinn ("Shinn") is an individual and resident of London, England and

9    is a current or former owner of NFI common stock.

10          28.    Rizalina "Glenda" Smart ("Smart") is an individual and resident of

11    Fayetteville, Georgia and is a current or former owner of NFI common stock with her late husband

12    Tom Smart.

13          29.    Robert Smykowski ("Smykowski") is an individual and resident of Poway,

14    California and is a current or former owner of NFI common stock.

15          30.    Thomas Vallarino ("Vallarino") is an individual and resident of Manhattan

16    Beach, California and is a current or former owner of NFI common stock.

17          31.    Leonard and Valerie Vidal (collectively "Vidal") are individuals and

18    residents of Millersville, Maryland, and are current or former owners of NFI common stock.

19          32.    Linda Walter ("L. Walter") is an individual and resident of Tarrytown, New

20    York and is a current or former owner of NFI common stock.

21          33.    Ira Walter ("I. Walter") is an individual and resident of Columbus, Ohio

22    and is a current or former owner of NFI common stock.

23          34.    Norman and Doris Walter (collectively "N. Walter"), are individuals and

24    residents of Southbury, Connecticut and are current or former owners of NFI common stock.

25          35.    Robert Wilen ("Wilen"), is an individual and resident of Palo Alto,

26    California and is a current or former owner of NFI common stock.

27          36.    Jeffrey Williams ("Williams"), is an individual and resident of Houston,

28    Texas and is a current or former owner of NFI common stock.

1       37.    Defendant Banc of American Securities LLC, ("Banc of America") is a

2    Delaware corporation.  Upon information and belief, Banc of America has its principal office in

3    San Francisco, California.  Upon information and belief, Banc of America is the tenth largest

4    prime brokerage firm in terms of aggregate client assets (2.0% of prime brokerage market).

5    Furthermore, Banc of America is a market specialist in NFI stock.

6       38.    Defendant The Bank of New York is a New York corporation.  Bank of

7    New York is in the business of, among other things, providing prime brokerage services and

8    securities lending.  The Bank of New York is qualified to and does do business in the state of

9    California.

10       39.    Defendant Bear, Stearns Securities Corp. ("Bear Stearns") is a Delaware

11    Corporation with its principal place of business in New York, New York. Upon information and

12    belief Bear Stearns is the second largest prime brokerage firm in terms of aggregate client assets

13    (20.9% of the prime brokerage market).  Bear Stearns is qualified to and does do business in the

14    state of California.

15       40.    Defendant Citigroup, Inc. ("Citigroup") is a Delaware Corporation.    Upon

16    information and belief Citigroup is the sixth largest prime brokerage firm in terms of aggregate

17    client assets (2.7% of the prime brokerage market).  Citigroup is qualified to and does do business

18    in the state of California.

19       41.    Defendant Credit Suisse (USA) Inc. ("Credit Suisse") is a Delaware

20    corporation.  Upon information and belief, Credit Suisse is the ninth largest prime brokerage firm

21    in terms of aggregate client assets (2.2% of the prime brokerage market).  Credit Suisse is

22    qualified to and does do business in the state of California.

23       42.    Defendant Deutsche Bank Securities, Inc. ("Deutsche Bank") is a Delaware

24    corporation.  Upon information and belief, Deutsche Bank is the eighth largest prime brokerage

25    firm in terms of aggregate client assets (2.5% of the prime brokerage market).  Deutsche Bank is

26    qualified to and does do business in the state of California.

27       43.    Defendant The Goldman Sachs Group, Inc. ("Goldman") is a Delaware

28    corporation with its principal place of business in New York, New York.  Upon information and

1    belief, Goldman is the third largest prime brokerage firm in terms of aggregate client assets

2    (16.5% of the prime brokerage market.)  Goldman is qualified to and does do business in the state

3    of California.

4          44.    Defendant Lehman Brothers Inc. ("Lehman") is a Delaware corporation.

5    Upon information and belief, Lehman is the seventh largest prime brokerage firm in terms of

6    aggregate client assets (2.6% of the prime brokerage market).  Lehman is qualified to and does do

7    business in the state of California.

8          45.    Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") is

9    a Delaware corporation.  Upon information and belief, Merrill Lynch is the fifth largest prime

10   brokerage firm in terms of aggregate client assets (4.6% of the prime brokerage market).  Merrill

11   Lynch is qualified to and does do business in the state of California.

12         46.    Defendant Morgan Stanley & Co., Incorporated ("Morgan Stanley") is a

13   Delaware corporation.  Upon information and belief Morgan Stanley is the largest prime

14   brokerage firm in terms of aggregate client assets (23.1% of the prime brokerage market).  Morgan

15   Stanley is qualified to and does do business in the state of California.

16         47.    Defendant UBS Financial Services, Inc. ("UBS") is a Delaware corporation.

17   Upon information and belief, UBS is the fourth largest prime brokerage firm in terms of aggregate

18   client assets (5.9% of the prime brokerage market).  UBS is qualified to and does do business in

19   the state of California.

20         48.    The names and capacities of the Defendants named as Does 1 through 100,

21   inclusive, are presently unknown to the Plaintiffs.  Plaintiffs are informed and believe that Does 1

22   through 100, inclusive, are the affiliates, partners, co-venturers, co-conspirators and/or aiders and

23   abettors of the other Defendants, and each other, and Defendants agreed, conspired and

24   participated with the other Defendants in doing the things alleged herein, and ratified and accepted

25   the benefits of the acts of the other Defendants, such that they are in some manner responsible for

26   the acts and omissions complained of herein.  Accordingly, these Defendants, each of whom is

27   legally responsible for the acts alleged herein, are sued by these fictitious names.  When the

28

1    identities and capacities of Does 1 through 100, inclusive, are ascertained, Plaintiffs will seek

2    leave of Court to amend the Complaint accordingly.

3                                    **NFI'S BUSINESS**

4           49.    NovaStar Financial, Inc. (NYSE:NFI) is a specialty finance company that

5    originates, purchases, sells, invests in and services residential nonconforming loans. Founded in

6    1996, NovaStar efficiently brings together the capital markets, a nationwide network of mortgage

7    brokers, and American families financing their homes. NovaStar is headquartered in Kansas City,

8    Missouri, and has lending operations nationwide including California.

9           50.    Structured as a Real Estate Investment Trust (REIT), NFI manages a long-

10   term mortgage asset portfolio consisting of nonconforming mortgage loans acquired primarily

11   from its wholly owned subsidiary, NovaStar Mortgage, Inc. ("NMI"), and mortgage securities

12   retained in securitization transactions. NFI regularly securitizes the mortgage loans it originates

13   by pooling mortgage loans to serve as collateral for asset-back bonds. From these securitizations,

14   NFI generally retains certain mortgage securities, which primarily represent the right to receive the

15   net cash flows of the underlying mortgage loan collateral in excess of bond expenses and cost of

16   funding.

17          51.    NFI operates its mortgage lending operation through NMI. As NFI stated in

18   its Form 10-K for 2003, "[t]he primary function of our mortgage lending operations is to generate

19   nonconforming loans, the majority of which will serve as collateral for our mortgage securities."

20   NMI has developed an independent nationwide network of loan brokers and mortgage lenders who

21   submit mortgage loans to it.

22          52.    For 2005, NFI reported that its portfolio of loans under management was

23   $14 billion, up 15% from 2004. Total nonconforming loan production was $9.3 billion, up 10%

24   from 2004. Book value grew 21% between 2004 and 2005. For full-year 2005, NovaStar reported

25   $132.5 million in net income available to common shareholders, up 21% from 2004. Earnings per

26   share available to common stockholders was $4.42, a 4% increase on a larger number of shares

27   outstanding compared with $4.24 in 2004. Portfolio net interest income for 2005 was $219.9

28   million, an increase of 49%.

53.     For full-year 2004, NFI reported that their total portfolio of loans under management had increased to $12.2 billion, up 69% from 2003's $7.2 billion.  Total nonconforming loan production for 2004 was $8.4 billion, a 58% increase over 2003, which was in the upper-end of the range that NFI had projected at the beginning of the year - and more than double the $2.5 billion that NFI originated in 2002.  Gross interest income from the portfolio of loans NFI manages was $224 million, $170 million, and $107 million for 2004, 2003 and 2002, respectively.  Taxable income, the figure from which the dividend paid to shareholders must be calculated, was $250.5 million, $137.8 million, and $49.5 million for 2004, 2003 and 2002, respectively.  Net (GAAP) income for the first 9 months of 2005 was $132.4 million, up from $109.1 million in 2004.  The company's taxable income, originations, and profitability have continued to increase substantially every year since 2001.  However, beginning in 2004 forward, NFI's share price unexpectedly dropped over fifty-percent.

## DEFENDANTS' WRONGFUL ACTIONS

54.     Defendants are in the prime brokerage business.  A prime broker acts as settlement agent, providing custody for assets and financing for its clients, who are hedge funds, money managers, market makers, arbitrageurs, specialists and other professional investors.  Prime brokers are responsible for assuring the proper accounting and settlement of stock trades, including short sales.  Prime brokers are responsible for most of the lending of securities in the marketplace that constitute short sales.

55.     Collectively, Defendants control 83% of the prime brokerage market.

56.     Generally speaking, in a short sale, a person sells stock that he or she does not then own, by borrowing the stock and warranting to the stock lender that the loan will be "covered" with shares purchased at a later date.  The seller speculates that the price of the stock will go down so that, when the loan is "covered," he or she will profit from the drop in price.

57.     The prime brokers are responsible in short sales for, among other things, locating shares of the shorted stock, borrowing the stock, and delivering the stock to the buyer.

58.     Securities regulations generally require that sales of shorted stock must be borrowed from investors who hold their shares in margin accounts or that are otherwise made

1    available for lending by institutions. Shares in cash accounts or retirement accounts cannot be

2    borrowed as part of short sales, thus limiting the supply of shares that are available for short sales.

3           59.    Prime brokers charge a fee to the short sellers for the service of delivering

4    the borrowed shares to the buyer.

5           60.    Prime brokers are required to deliver the stock within three days of the short

6    sale. If the prime broker fails to deliver the security to the buyer within the normal three day

7    settlement period, the shares become "fails to deliver" and the sale is a "naked short sale."

8           61.    In a fail to deliver, the sale to buyer still occurs, but it is of phantom shares,

9    because real shares were never borrowed and delivered.

10          62.    Upon information and belief, the vast majority of fails to deliver where the

11   fails are persistent, are intentional, and not due to inadvertent errors. Prime brokers are motivated

12   to intentionally fail to deliver stocks because this removes a core cost from their securities lending

13   business – the cost of providing the security, thus allowing them to earn more money through the

14   charging of fees, commissions and/or interest through phantom securities transactions. Upon

15   information and belief, the prime brokers earn approximately $10 billion annually from their

16   securities lending operations.

17          63.    A persistent large number of fails to deliver create immense downward

18   pressure on the price of a company's stock. Failing to deliver shares can create an unlimited

19   supply of the stock for sale. Without supply side constraints, the markets for publicly traded

20   stocks cannot price the stocks at their fair value. Without having to buy or borrow a security for

21   settlement, naked short positions can grow very large, which puts further downward pressure on

22   the stock's price.

23          64.    "Fails to deliver" lists are prepared and published daily detailing each

24   company as to which there has been a substantial number of failures to deliver stock within the

25   'national clearance and settlement system' at the Depository Trust and Clearing Corporation

26   ("DTCC") and its subsidiaries. Upon information and belief, these lists represent only a portion of

27   the actual fails to deliver, as additional fails to deliver take place outside of the DTCC clearing

28   system. These lists began to be published in January, 2005.

65.    NFI has been on these lists consistently since they were first published meaning that large quantities of stock began failing to be properly delivered for settlements with shares issued by NFI since at least January 2005.

66.    Upon information and belief, in the fourth quarter of 2004, failures to deliver ran as high as 12.5% of the shares issued by NFI, or one of every eight shares authorized to trade, and these fails are just what is reported through the DTCC system as fails. For 2005, the data show the failures to deliver running as high as 6.5% of NFI's shares. This pattern of substantial and persistent failures to deliver NFI stock continues in 2006.

67.    Upon information and belief the Defendants, who control 83% of the prime brokerage market, have at all times alleged herein and continue to, intentionally fail to deliver NFI stock to buyers in short sales transactions.

68.    These failures by Defendants to deliver NFI issued stock for proper settlement have created dramatic distortions with regard to the nature and amount of trading in NFI's publicly held stock.

69.    NFI 's share price is depressed because of the oversupply caused by failing to settle transactions with shares issued by NFI. Shares issued by NFI in the normal course of raising capital as a public company are not being properly valued because of the dilutive effect of the phantom shares, which were not issued by NFI. Selling but failing to deliver actual shares issued by NFI has the effect of generating a virtually unlimited supply of NFI shares for sale, which negatively alters normal supply side market constraints found in a properly functioning market.

70.    Upon information and belief, Defendants' market manipulation took place in the state of California.

71.    Plaintiffs are informed and believe that Defendants and Does 1 through 100, individually and collectively, each and all of them, agreed and conspired to engage in the unlawful, unfair, or fraudulent business acts or practices, and/or aided and abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other.

1   ///

2   ///

3        **DAMAGE TO NFI SHAREHOLDERS RESULTING FROM DEFENDANTS'**

4                          **WRONGFUL CONDUCT**

5         72.    Defendants' wrongful actions have resulted in substantial harm to Plaintiffs.

6   Among the harms Defendants' actions have caused Plaintiffs are: loss of the price per share of

7   NFI common stock, which has declined by more than 50%; and impairment of NFI's share price

8   continued ability to grow at historic rates.

9         73.    Each Plaintiff sold shares of NFI during the timeframes alleged herein that

10   Defendants acted wrongfully at prices that were artificially depressed due to Defendants' wrongful

11   conduct. Plaintiffs were damaged in an amount subject to proof at trial, which amount exceeds the

12   jurisdictional minimums of this court.

13                     **FIRST CAUSE OF ACTION**

14   **(California Corporations Code §§ 25400, et seq. – Plaintiffs Against All Defendants)**

15         74.    Paragraphs 1 through 73, inclusive, of this Complaint are incorporated by

16   reference as if set forth in full herein.

17         75.    By virtue of the allegations set forth above, Defendants violated California

18   Corporations Code Sections 25400(a) and (b) et seq.. Defendants' violations were committed

19   either directly or indirectly within California.

20         76.    Defendants knew that the transactions they were effecting would be

21   reported solely as a sale, without a corresponding purchase or change in the beneficial ownership

22   of NFI common stock. Defendants acted with the intent to and thereby did create a false or

23   misleading appearance with respect to the market for NFI's common stock, in violation of Section

24   25400(a).

25         77.    Defendants effected repeated transactions in NFI common stock, creating

26   actual or apparent active trading in NFI and depressing the price of NFI with the knowledge that

27   such action would depress the price and to induce the sale of that stock by others in violation of

28   Section 25400(b).

78.     As a proximate result of Defendants' acts and omissions occurring in California with regard to NFI, as alleged, NFI's stock price was manipulated downward, and Plaintiffs were injured by such downward manipulation.

79.     Pursuant to the provisions of California Corporations Code § 25500, Plaintiffs are entitled to, and should be awarded, damages against Defendants for unlawful manipulation of the price of NFI stock.

### SECOND CAUSE OF ACTION
**(Violation of California Business & Professions Code §§ 17200, *Et Seq*. and §§ 17500, *Et Seq*. – Plaintiffs Against All Defendants)**

80.     Paragraphs 1 through 79, inclusive, of this Complaint are incorporated by reference as if set forth in full herein.

81.     Defendants' illegal stock market manipulation constituted unlawful, unfair, or fraudulent business acts or practices by the Defendants, and each of them, all in violation of California Business & Professions Code §§ 17200, *et seq*. and §§ 17500, *et seq*.

82.     Plaintiffs have been injured by the Defendants violations of California Business & Professions Code §§ 17200, *et seq*. and §§ 17500, *et seq*. and Defendants have been unjustly enriched at Plaintiffs' expense.

83.     Plaintiffs are informed and believe that Defendants and Does 1 through 100, individually and collectively, each and all of them, agreed and conspired to engage in the unlawful, unfair, or fraudulent business acts or practices, and/or aided and abetted, as alleged herein, the acts of each other, and encouraged, ratified, and/or accepted the benefits of the acts of each other.

84.     Plaintiffs are entitled to preliminary and permanent injunctive relief restraining the Defendants and Does 1 through 100, individually and collectively, each and all of them from committing further unfair trade practices and restitution from Defendants according to proof.

### PRAYER

WHEREFORE, Plaintiffs seek judgment against Defendants as follows:

**On the First Cause of Action:**

1         1.      For general damages in an amount according to proof at trial, in an amount

2 in excess of the jurisdictional minimum of this Court.

3         2.      For special damages in an amount according to proof at trial, in an amount

4 in excess of the jurisdictional minimum of this Court.

5         3.      For prejudgment interest.

6         4.      Other applicable remedies as provided in the Corporations Code.

7         5.      For costs.

8         6.      For such and further relief as the Court may deem appropriate.

9         **On the Second Cause of Action:**

10         1.      For restitution in an amount according to proof at trial, in an amount in

11 excess of the jurisdictional minimum of this Court.

12         2.      For special damages in an amount according to proof at trial, in an amount

13 in excess of the jurisdictional minimum of this Court.

14         3.      For prejudgment interest.

15         4.      Other applicable remedies as provided in the Corporations Code.

16         5.      For costs.

17         6.      For such and further relief as the Court may deem appropriate.

18

19 Dated: June 22, 2006            STEIN & LUBIN LLP

20

21

22         By: _____
            THEODORE A.  GRIFFINGER, JR.

23             Attorneys for Plaintiffs
            JOSEPH AVENIUS, an individual, et al.

24

25

26

27

28

.06/22/2006 THU 13:06  FAX 415 357 0595 SPECIALIZED LEGAL SERV.                    @023/036

# Alternative Dispute Resolution (ADR) Information Package

# Alternatives to Trial

# Here are some other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 201.9(c))

**Superior Court of California
County of San Francisco**

ADR-1  1/06  (bc)                                                          Page 1

.06/22/2006 THU 13:06  FAX 415 357 0595 SPECIALIZED LEGAL SERV.                    @024/036

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can be speedier.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can permit more participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR can be flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early  neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy.  Attorneys are encouraged to share this guide with clients.  By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for civil matters; each program is described below:

    1)    Judicial arbitration
    2)    Mediation
    3)    The Early Settlement Program (ESP) in conjunction with the
          San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony.  The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.  When the Court orders a case to arbitration it is called judicial arbitration.  The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration.  Here, the parties

.06/22/2006 THU 13:07  FAX 415 357 0595 SPECIALIZED LEGAL SERV.                    ☒021/036

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case.  Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions.  Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 provides three different voluntary mediation programs for civil disputes.  An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts.  Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties.  A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed.  If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation.  The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial.  Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110).  Both forms are attached to this packet.

ADR-1  1/06 (bc)                                                           Page 6

## Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-8913

## Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar.  The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute.  The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference.  A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case.  The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court.  Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $200 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 982-1600.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution Coordinator,
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

ADR-1  1/06 (bc)

06/22/2006 THU 13:08 FAX 415 357 0595 SPECIALIZED LEGAL SERV.                    Ø032/036

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
### 400 McAllister Street, San Francisco, CA 94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ Private Mediation        ☐ Mediation Services of BASF    ☐ Judicial Mediation
☐ Binding arbitration                                    Judge _____
☐ Non-binding judicial arbitration                       Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2 3/06                    **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**